HIGGINS, Justice.
 

 The plaintiffs, as judgment creditors, instituted proceedings against the administrator of their deceased debtors’ estates, to show cause why he should not be ordered to advertise for sale and sell the immovable property upon which they had a judicial mortgage, for the purpose of raising funds to pay the indebtedness.
 

 The administrator answered the rule, averring that he had not applied for an order to sell the property because the amount 'of the indebtedness of the succession had riot been fixed nor the necessity of a public sale of the property determined. He further averred that two of his co-heirs or brothers had instituted separate suits against him as administrator for the sum of $1,000 each for improvements said to have been placed by them upon their father’s land with his permission; that these claimants advised him if they were successful in their suits, they would accept the successions of'their father and mother and pay the indebtedness secured by the-judicial mórtgage, or, in the event they did not do so, they would be in a better position to bid on the property at the sale and thereby cause the property to be sold at a higher price; and that the sale of the property should not be ordered until the two pending suits have been decided. In the alternative, he pleaded that the property should not be sold until the Fall of the year when it would bring a much better price than during the summer.
 

 There was judgment directing the administrator to apply for an order of sale of the property and to have it advertised and sold at public auction.
 

 The administrator appealed.
 

 After the transcript was - filed in this Court, the administrator filed exceptions of no right and no cause of action.
 

 The record shows that on April 28, 1938, James M. Rutledge secured a judgment on a note against the deceased, George A. Dodson, for the sum of $1,000, with 8% interest from January 24, 1930, 10% attorneys’ fees and costs of court, subject to a credit of $50 representing two payments made by decedent in 1934 and 1936. The judgment was recorded in Book 200 at page 324 of the mortgage records. Mr. Rutledge and his wife both died and on November 22, 1940, their eight children, plaintiffs in rule herein, were judicially recognized as their sole and only heirs at law and placed in possession of their estates which included the above mentioned judgment.
 

 George A. Dodson, the judgment debtor, died on July 21, 1942, and his wife died on
 
 *609
 
 November 19, 1940. Their successions were opened on October 26, 1942, and the defendant, their son, qualified as the administrator of their estates on March 13, 1943. The 55.61 acre farm on which the decedents lived, and the sole asset of their successions, was appraised at the sum of $5,-000, subject to mortgages in favor of the Federal Land Bank in the original amounts of $1,200 and $600, respectively, recorded in Mortgage Book 81, pages 551-553. On June 4, 1943, the present rule was filed, after the plaintiffs had unsuccessfully tried to .prevail upon the administrator to sell the real estate to satisfy their judgment.
 

 The exceptions are based upon Articles 983, 984, 985 and 986 of the Code of Practice, it being contended that before a creditor can ask that property be sold in a succession to satisfy his debt, 'it is necessary that he secure a judgment against the administrator or have him acknowledge the debt.
 

 In paragraph three of the administrator’s answer to the rule, filed June 25, 1943, it is stated:
 

 “That there has been filed against your Administrator two suits to have recognized indebtedness against the succession and have the same ordered paid as a preference claim and prior in rank to the asserted indebtedness to plaintiffs in rule; that said suits are numbered 31,654 and 31,655 on the docket of this Court, George A. Dodson and Robert Dodson against Walter Dodson, Administrator; that the same are at issue but untried; that if the plaintiffs in said suits are successful therein they will either accept said succession and pay the indebtedness, so they advise your Administrator, or they will bid on the property at the sale and thereby cause said property to be sold at a higher price than otherwise; that a sale should not be ordered of said property of the succession until said suits are tried and disposed of and until the amount of the indebtedness of the succession has been definitely determined.”
 

 It will be observed that the administrator states that his brothers have advised him that if they were successful in their suits, they would either accept the succession and pay the indebtedness or bid on the property at the sale in order for it to bring the highest price. Plaintiffs introduced in evidence certified copies of the monied judgment and the judgment recognizing them as heirs and placing them in possession of their parents’ estates. Nowhere in the record did the administrator or any of the heirs testify that the plaintiffs were not judgment creditors. The indebtedness is not denied. Furthermore, in the correspondence between the attorneys for the parties, the indebtedness is admitted, the sole requst made by the Dodson heirs being that they would like to have a reduction in the amount of the judgment. The plaintiffs declined to do so. The plaintiffs’ judgment is based upon a note and, clearly, that claim was liquidated by virtue of the judgment which was presented to the administrator for payment. The liquidated claim or judicial mortgage having been presented by the petitioners to the administrator before filing their petition and it having been acknowledged by the admin
 
 *611
 
 istrator and by the Dodson heirs, it is clear that the exceptions are not well founded.
 

 Counsel for the administrator has referred us to the case of Succession of Winn, 30 La.Ann. 702. In that case certain alleged creditors who had their claims illegally acknowledged, and who did not offer proof to support them, were attempting to assert these claims against other creditors, in connection with the tableau of distribution. The court found that the tableau was irregular and illegal. It also held that a judgment overruling a plea of prescription filed by the executor against the holder of certain notes made by the 'deceased was not binding upon other creditors who were not parties to the proceedings. 'The court upheld the judgment dismissing" the opposition to the order authorizing the executor to sell the property for the payment of the debts. The rights, if any, of all creditors and parties at interest were reserved by the court, to be presented in proper proceedings. The case does not hold that the judgment in favor of the creditor must be against the administrator before the judgment creditor can ask the court to compel the administrator to sell the succession property to pay debts.
 

 On the merits, the case of Payne v. Ferguson, 23 La.Ann. S81, is pertinent. There, the Court said:
 

 “The plaintiff, an acknowledged and judgment creditor of the succession of James T. Payne, took a rule upon the defendant, representing said succession, to compel the sale of the property thereof to pay his claim, which amounted to upward of $20,000.
 

 “In answer to’ the rule, the
 
 curator
 
 averred that it would be injurious to creditors to sell the property at the time; that at the death of J. T. Payne, the laborers on the plantations belonging to him were under contract for the year; that provisions, teams and farming implements had been obtained, and that under the circumstances he, the curator, with • the consent of the creditors, was carrying on said plantations for the use of the creditors; that the laborers have an interest in said crops, and it was impossible to place a proper value thereon; besides, the mules used on said plantations were needed to gather and prepare the crops for market. He therefore opposed the sale.
 

 Hí ^ ^
 

 “We do not see that the plaintiff, an acknowledged creditor for- a large sum, and holding a special mortgage on part of the property, was unreasonable or acted illegally in demanding the sale of the property to pay his claim. C. P. articles 990, 991, 992. He had this right, and there is no evidence that he ever renounced it. If he consented to let the curator continue the cultivation of the crops.after the death of J. T. Payne, that did not deprive him of the exercise of his legal rights. If the property has been sold under the order of the court, and the proceeds in the hands of the curator represent its value the appellants, John Henry & Co.-, are not precluded from asserting their claim to the proceeds.
 

 “We see no reason to disturb the judgment.”
 

 In the Succession of Tabor, 33 La.Ann. 343, the Court said:
 

 
 *613
 
 “The right of creditors of all successions, whether vacant or administered by administrators, or executors, to enforce the payment of their claims by the sale of succession property, is absolutely recognized and clearly defined by our Code of Practice, Arts. 990, 991, 992.
 

 “These unambiguous provisions of law contain no language or reservation to justify the conclusion that the application of the creditor must be preceded by, or predicated upon, an account of administration or tableau of distribution, by the executor or administrator of the succession. It is the first and paramount duty of executors and administrators to watch over the interest of creditors, and to see to, and provide for, the payment of their just claims against the successions which they represent, and to that end they are vested by law with full power to provoke the sale of the personal, and if need be, the immovable property of the succession. C.C. 1668, 1670; Succession of Harkins, 2 [La.] Ann. [923], 925; Succession of De Egana, 18 [La.] Ann. [59], 63.
 

 “And in case of the failure of the executor or administrator to comply with his plain duty as directed by the salutary provisions pointed out above, the creditors have then the compulsory remedy provided for in the Code of Practice.
 

 “And when the claims of any creditors have ripened into judgments, as is the case with plaintiffs in this rule, it is not a violent presumption to suppose, and even to conclude, that the executor has no funds wherewith to pay their judgments; and the law does not require the creditors to incur the additional delay, to be occasioned by proceedings against the executor or administrator for the rendition of an account, as a condition and precedent to the exercise of a right unconditionally granted to them by law. Succession of Decuir, 22 [La.] Ann. 371; Succession of Smith, 9 [La.] Ann. 107; Union Bank v. McDonogh’s Ex’rs,
 
 7
 
 [La.] Ann. 231; Succession of Ogden, 10 Rob. [457] 458.”
 

 See also Union Bank v. Executors of McDonogh,
 
 7
 
 La.Ann. 231; Articles 1058 and 1668, Revised Civil Code.
 

 In the instant case) the two brothers, who instituted suits against the administrator to be recognized as creditors in the sum of $1,000 each for the value of improvements alleged to have been placed upon the property, did not intervene in the proceedings taken by the plaintiffs against the administrator. However, the plaintiffs did intervene in the aforementioned suits and denied that the plaintiffs therein (the two brothers) were creditors of the succession and averred that even if they were, their recorded judicial mortgage primed the asserted unliquidated claims. At the time the rule in question was decided by the lower court, the above stated litigation had not been concluded. Whatever rights the two brothers have are not involved here and we refrain from expressing any opinion concerning them. If they have any claim to the ownership of any part of the property sought to be sold in the succession, or if they have any claim against the succession they may assert those rights in proper proceedings. As the two brothers are not parties here, any judgment we render herein is
 
 *615
 
 not binding upon them but solely upon the plaintiffs and the administrator.
 

 The administrator has not shown any legal ground for refusing to apply- to the court for an order to advertise and sell the property belonging to the succession, in order to realize funds with which to pay the succession debts.
 

 The alternative defense, that the farm property would bring a better price in the Fall than in the Summer of 1943 passes out of the case, because that period of time has elapsed.
 

 For the reasons assigned, the judgment appealed from is affirmed at the appellant’s costs.